UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **ANNA J. PHELAN DERBY,** | ) |
| Plaintiff, | ) Case No. CV06-01716 AJW |
| v. | ) MEMORANDUM OF DECISION |
| **MICHAEL J. ASTRUE**[1], **Commissioner of the Social Security Administration,** | ) |
| Defendant. | ) |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural history of this case, which is summarized in the Joint Stipulation. [See JS 1-2]. Plaintiff was 57 years old when she allegedly became disabled on March 19, 2004 due to shoulder, neck, and back problems, headaches, sleep problems, and depression. She filed her application for disability insurance benefits on November 16, 2004. [AR 54, 86]. Following an

---

[1] Michael J. Astrue is substituted for his predecessor, Jo Anne B. Barnhart. Fed. R. Civ. P. 25(d)(1).

1  administrative hearing on October 18, 2005, plaintiff's application was denied in a written decision by
2  Administrative Law Judge Keith Dietterle (the "ALJ"). The ALJ found that plaintiff had mild neck
3  degeneration and bilateral shoulder osteoarthritis that were severe, but that she retained the residual
4  functional capacity ("RFC") to perform light work involving no more than occasional climbing, crawling,
5  and reaching. [Administrative Record ("AR") 17-18]. The ALJ determined that plaintiff's RFC did not
6  preclude her from performing her past relevant work as a loan secretary and customer service representative,
7  and therefore that she was not disabled at any time through the date of the ALJ's decision. [JS 2; AR 17-18].
8  The Appeals Council denied plaintiff's request for review. [AR 5-7].

## Standard of Review

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or if it is based on the application of incorrect legal standards. Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is more than a mere scintilla but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Thomas, 278 F.3d at 954. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (quoting Consolidated Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)); Thomas, 278 F.3d at 954. The court is required to review the record as a whole, and to consider evidence detracting from the decision as well as evidence supporting the decision. Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

## Discussion

**Treating source opinions**

Plaintiff contends that the ALJ did not give appropriate weight to the opinions of treating physicians John Tholen, Ph.D., Douglas Garland, M.D., and Alexander Latteri, M.D. [JS 3].

Where the opinion of a treating or examining physician is uncontroverted, the ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting it. Where a treating doctor's opinion is controverted by another doctor's opinion, the treating source opinion may be

rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan v. Halter, 242 F.3d 1144, 1148-1149 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

**Dr. Tholen**

The ALJ noted that in September 2005, "ostensibly at the request of counsel," plaintiff was seen by Dr. Tholen for a psychological evaluation. [AR 15]. Based on a history, mental status examination, and his behavioral observations, Dr. Tholen diagnosed a major depressive disorder, severe, characterized by anhedonia, pervasive loss of interest in almost all activities, persistent sleep disturbance, psychomotor agitation, loss of energy, feelings of worthlessness, impaired concentration and disruptive thinking, and occasional suicidal thoughts. [AR 290-291]. He assessed marked restrictions in plaintiff's activities of daily living, social functioning, and in a variety of work-related mental abilities. Dr. Tholen opined that plaintiff is "chronically psychiatrically disabled over and above her musculoskeletal impairments." [AR 291].

The ALJ found Dr. Tholen's assessment "simply not credible." [AR 15]. The ALJ observed:
> There is no mention anywhere else of any mental impairment. There is no record of any treatment for any mental impairment. There are no complaints prior to this assessment of any mental impairment. And yet, Dr. Tholen suggests the claimant is suddenly and quite dramatically a complete invalid due to mental illness. Based on this assessment, the claimant should require institutionalization. Dr. Tholen's report is clearly and blatantly exaggerated and is rejected.

[AR 15].

The Commissioner did not order a consultative psychological examination, and the medical expert who testified during the hearing deferred an assessment of her psychological diagnosis and condition to a "psychologist or a psychiatrist for his opinion." [AR 337]. Consequently, Dr. Tholen's opinion is uncontroverted and may be rejected only for clear and convincing reasons. The ALJ's reasons were neither clear nor convincing.

First, the possibility that plaintiff may have been referred to Dr. Tholen by her attorney is not a ground for rejecting or discounting his opinion unless "the opinion itself provides grounds for suspicion as to its legitimacy." Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996) (holding that the claimant's

3

failure to seek mental health treatment until referred by his lawyer was not a valid reason for discrediting an otherwise credible medical opinion).

Second, the ALJ was wrong in noting that plaintiff had no prior mental health complaints. During the hearing in October 2004, plaintiff testified that she used to be a "very optimistic, very upbeat person" [AR 322] who believed in hard work and worked long hours for many years to earn promotion from her job as a bank teller to her "dream job" as an administrative assistant/loan secretary at the same bank.[2] [AR 317-319, 322]. She testified that when she no longer could perform her job due to her shoulder and neck problems, she "felt like her world was wrecked," and she became "very depressed because the job was almost my life and I, I worked so hard to get where I was . . . ." [AR 318]. She complained of anxiety and depression to Dr. Latteri, who diagnosed her with those conditions in March 2005 and prescribed medication. In her June 2005 disability appeal report, she complained of worsening "emotional stress" and "severe depression" linked to deterioration in her physical condition. [AR 86].

Third, the ALJ mischaracterized the record when he said there was no other evidence of a mental impairment. Progress reports from plaintiff's treating orthopedist, Dr. Latteri, for the period from March 2005 through August 2005 include diagnoses of depression and anxiety. [AR 281-283]. Dr. Latteri prescribed a generic form of the antidepressant Paxil for plaintiff, and he mentioned that plaintiff was scheduled for a private psychological evaluation. [AR 92, 281, 322-323].

Fourth, the ALJ incorrectly asserted that there was no evidence of mental health treatment. As noted above, the record indicates that Dr. Latteri diagnosed depression and anxiety beginning in March 2005 and prescribed an antidepressant for plaintiff. Plaintiff also testified that after her evaluation by Dr. Tholen, she began attending a weekly group therapy session he conducted. [AR 322-323]. Plaintiff's delay in obtaining

---

[2] The record indicates that plaintiff completed college in her South Korea, where she was born. After plaintiff's marriage ended, she emigrated with her two children to the United States in 1981. She remarried in this country but was widowed, and she later married again. She worked for about five years in a sandwich shop before being hired in 1986 as a teller at Farmers & Merchants Bank. She held the positions of teller and customer service specialist at that bank until 1995, when she was promoted to the position of administrative assistant/loan secretary, which involved assisting the branch manager and processing loans and other transactions. She held that position until March 2004, when she testified that she left her job on account of her neck and shoulder injuries. She received state disability benefits and a lump sum workers' compensation payment. [AR 67-77, 288-289, 308-312, 316-317].

4

treatment for depression may have some bearing on the extent or duration of her mental impairment, but it does not justify rejection of Dr. Tholen's opinion. See Nguyen, 100 F.3d at 1464-1465 (holding that the ALJ impermissibly rejected an examining psychologist's diagnosis of depression where the claimant did not seek treatment for three years prior to consulting the psychologist at his attorney's request, and explaining that "the fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that [the examining psychologist's] assessment of claimant's condition is inaccurate....").

Fifth, the ALJ mischaracterizes Dr. Tholen's report. Dr. Tholen did not suggest that plaintiff "suddenly and quite dramatically [became] a complete invalid due to mental illness." [AR 288]. Relying on plaintiff's history, Dr. Tholen described a progression in plaintiff's symptoms related to the deterioration in her physical condition:

> [Plaintiff] reports that in 2002 she developed increasingly frequent and severe pain of her neck and both shoulders. She reports that it was eventually determined that many years of doing keyboard work for 60-70 hours at a non-ergonomic work station had resulted in chronic injuries to her neck and shoulders. . . . She continued to perform her keyboarding work at the bank until her neck and shoulder injuries became totally disabling in March of 2004. She indicates that her injuries have now become chronic, and that she will never be able to return to the type of work by which she has supported herself since her arrival in this country in 1981.
>
> [Plaintiff] reports that she has been unable to adjust to the effects of her neck and shoulder injuries, and that she has become depressed and experienced major personality change as a result. . . . [Plaintiff] describes herself as a perfectionistic person, and she finds being unable to accomplish goals to be unacceptable. She reports that she is continually haunted by remorse about having become injured, as well as preoccupied with worries about what will become of her in the future. She indicates that the loss of her career has made her feel worthless and ashamed, and that she has become extremely isolated . . . . She indicates that she has become chronically angry and irritable . . . . [¶] Whereas [plaintiff] has always previously been an obsessively punctual and tidy individual, she no longer cares about her

self or her home environment. She reports that she is constantly agitated and emotionally distressed, and that she now experiences a chronic rash [diagnosed as] stress-related. She occasionally thinks she would be better off dead.

[AR 288-289].

Based on plaintiff's history and mental status examination, Dr. Tholen concluded that plaintiff had severe major depression and marked impairments in many mental work-related functional abilities. [AR 291]. Nothing in the Commissioner's regulations or in the record suggests that a disability claimant cannot legitimately be considered markedly impaired in work-related mental abilities or disabled unless she is an "complete invalid" or "institutionalized." The ALJ improperly used that false premise as a reason to discredit Dr. Tholen's opinion. [AR 15].

**Dr. Garland**

A "Physical Capacities Evaluation" form dated October 6, 2005 indicates that plaintiff can do less than sedentary work. The ALJ rejected that evaluation because the person who signed that form, Douglas Garland, "does not indicate he is a doctor o[f] any kind, nor does he provide any basis for such limitations." [AR 15, 301]. Also part of the record, however, is a report dated October 27, 2005 from "Douglas Garland, M.D."[3] [AR 303]. In that report, Dr. Garland states that he is seeing plaintiff for the second time, and that plaintiff "has been a workers' compensation patient and has been seen by Dr. Morrison in our office who treated her for two to three years for shoulder problems and neck problems." [AR 202]. According to another orthopedic report in the record, Drs. Garland and Dr. Morrison are board-certified orthopedic surgeons who are members of the Memorial Orthopedic Surgical Group in Long Beach, California. [AR 256-261]. The record includes other treatment reports from that medical group covering the period from March 2003 to October 2003. [AR 97-98, 234-237, 252-253].

Dr. Garland's October 27, 2005 report documents x-ray findings supporting his diagnoses of impingement syndrome of both shoulders with some acromioclavicular joint arthritis, degenerative arthritis of the cervical spine, and degenerative disc disease of the cervical spine, mostly at C5-C6. [AR 303]. He

---

[3] The signature line on the Physical Capacities Evaluation form bears the caption "SIGNATURE--DR.," so it may have been redundant to expect Dr. Garland to append "M.D." when signing his name on that form. [AR 301].

noted that "we have given [plaintiff] a prescription for" Flexeril. [AR 202]. He stated that plaintiff's symptoms warranted limitations in overhead activities, no prolonged typing, limitations in looking at computer screens and typing without ergonomic equipment. He noted that if those limitations were added to "the other limitations she has, she might then become permanently disabled." [AR 303].

Dr. Garland's report indicates that not only is he a physician, he qualifies as a treating source because (1) he said that he evaluated plaintiff twice, (2) belonged to an orthopedic surgical group that had treated plaintiff for an extended period, (3) had access to, and was familiar with, plaintiff's medical history and records, and (4) was involved in her treatment. The ALJ either ignored or overlooked Dr. Garland's October 27, 2005 report.[4] Whatever the explanation, the ALJ erred failed adequately to evaluate Dr. Garland's opinion.

**Dr. Latteri**

Another treating orthopedist, Dr. Latteri, completed a Functional Capacities Evaluation form provided by the State Compensation Insurance Fund in November 2004. [AR 133]. On that form, Dr. Latteri indicated that plaintiff is limited to occasional bending at the neck and waist, occasional twisting of the neck and waist, occasional pushing and pulling with the upper extremities bilaterally, no overhead work, and lifting, carrying, pushing, and pulling no more than ten pounds. [AR 133].

The ALJ mentioned Dr. Latteri's workers' compensation permanent and stationary report dated July 2004, which precludes plaintiff from heavy lifting, working at or above shoulder level, and no repetitive neck motion. [AR 15, 123-128]. Dr. Latteri's impression at that time was chronic cervical spine sprain; cervical disc bulge at C5-C6; bursitis, tendinitis, and chronic sprain of both shoulders with partial rotator cuff tear of the right shoulder; and chronic headaches associated with cervical spine symptoms. [AR 125].

The ALJ did not articulate reasons for rejecting Dr. Latteri's July 2004 permanent and stationary rating, and he failed even to mention Dr. Latteri's somewhat more restrictive November 2004 assessment. Defendant argues that the ALJ considered those opinions indirectly when he considered and adopted the testimony of Dr. Mason, the medical expert. [JS 6-7]. Dr. Mason's opinion conflicts with that of Dr. Latteri

---

[4] Defendant's argument that the October 27, 2005 was "extra-record" evidence not properly before the ALJ is rejected because that report is included in the exhibit list at the beginning of the administrative record and is duly numbered and included as an exhibit.

regarding functions that plainly are relevant to the ALJ's finding that plaintiff can perform her past relevant work as she described it. For example, Dr. Mason opined that plaintiff could lift or carry 25 pounds occasionally and occasionally reach in all directions, and he assessed no non-exertional limitations involving plaintiff's neck or waist. On the other hand, Dr. Latteri's July 2004 report limited plaintiff to no work at or above shoulder level, no repetitive neck motions, and no heavy lifting. In November 2004, Dr. Latteri also restricted plaintiff to occasional bending or twisting at the waist, occasional pushing and pulling with the upper extremities bilaterally, and lifting, carrying, pushing, and pulling no more than ten pounds. [AR 123-128, 133].

The ALJ cannot delegate to the medical expert the ALJ's duty to consider, and give reasons for rejecting, a treating physician's opinion, nor may the ALJ rely solely on the opinion of a non-examining physician such as Dr. Mason to justify rejection of a conflicting treating source opinion. See Lester, 81 F.3d at 830-831. Accordingly, there is no merit to defendant's contention that the ALJ discharged his duty to properly consider Dr. Latter's opinion merely by considering Dr. Mason's testimony and adopting his opinion.

**Determination of Plaintiff's Past Relevant Work**

Even with the RFC assigned by the ALJ, plaintiff cannot perform one of the two DOT jobs the ALJ found that she could perform. The ALJ wrote:

> The vocational expert testified at the hearing that, according to the Dictionary of Occupational Titles (DOT), the claimant's past relevant work as a loan secretary was skilled and required sedentary work activity; customer service representative was skilled and required light work activity.... [¶] Based on the claimant's residual functional capacity and the testimony of the vocational expert, . . . the claimant is capable of performing her past relevant work as a loan secretary and customer service rep.

[AR 16-17]. The vocational expert, however, did not testify about a DOT job titled "loan secretary" because, as plaintiff points out, there is no such job in the DOT. The vocational expert testified that the job of loan secretary was "best described" by the DOT job of "mortgage clerk," job number 249.362-014, and that plaintiff's past work as a bank customer service representative corresponded to the DOT job of customer service representative, job number 205.362-026. [AR 339].

The DOT job of customer service representative requires frequent reaching. [See JS, Ex. A]. Therefore, that job is not within the RFC assigned by the ALJ, which limits plaintiff to occasional reaching. [AR17-18].

The DOT job of mortgage clerk (which also may be designated as escrow clerk, foreclosure clerk, insurance clerk or tax clerk) differs significantly from the job of loan secretary as described in plaintiff's testimony and in the detailed written job materials she submitted in support of her disability claim. More particularly, the DOT job of "mortgage clerk" does not entail the wide variety of duties incorporated into plaintiff's particular past job as a loan secretary. For example, plaintiff testified that part of her job involved providing administrative support to the branch manager. She testified that her job as an administrative assistant was to [h]elp out branch manager . . . whatever branch manager need[s] to get this, things done, we help out. And so my title was administrative assistant/loan secretary. So we do process a loan . . . but we pretty much process all that work . . . ." [AR 317]. Plaintiff's testimony is consistent with the written job descriptions plaintiff submitted, which indicate that in addition to preparing and reviewing loan documents and processing and servicing loans, plaintiff was required to perform a wide variety of general office, administrative support, notary, and customer service functions in addition to her loan processing duties. [See AR 71-73].

The vocational expert said that the DOT job of mortgage clerk "best described" plaintiff's job as a loan secretary, but she did not say that "best" meant "closely," nor did she explain what the differences between the two jobs were, if any, and why those differences were or were not significant. Moreover, neither the DOT job title nor the DOT's description of a mortgage clerk's duties, fairly describes the job that plaintiff held. See Pinto, 249 F.3d at 846 (cautioning that "finding that a claimant has the capacity to do past relevant work on the basis of a generic occupational classification of the work is likely to be fallacious and unsupportable"). Even when an ALJ obtains the vocational expert testimony to help determine plaintiff's past relevant work, as he did in this case, the ALJ "is [not] in any way relieved of his burden to make the appropriate findings to insure that the claimant really can perform his or her past relevant work...." Pinto, 249 F.3d at 840. The ALJ did not make adequate findings.

For these reasons, the ALJ's evaluation of the medical evidence and plaintiff's past relevant work were legally defective, and his finding that plaintiff could perform her past relevant work was not supported

9

by substantial evidence in the record.

**Choice of remedy**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)). A district court, however,

> should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman, 211 F.3d at 1178). The Harman test "does not obscure the more general rule that the decision whether to remand for further proceedings turns upon the likely utility of such proceedings." Harman, 211 F.3d at 1179.

The ALJ failed to provide legally sufficient reasons for rejecting the medical opinion evidence described above. It is not clear that the ALJ would be required to award benefits if the opinions of Drs. Latteri and Garland were credited. Although it is virtually certain that the restrictions they prescribed would preclude plaintiff from performing her past relevant work once that work was properly classified, it is possible that plaintiff might still be found capable of performing alternative work. The vocational adversity of plaintiff's "advanced age," however, diminishes the likelihood that she would be able to perform alternative work. See 20 C.F.R. §§ 404.1563(e), 416.963(e); Terry v. Sullivan, 903 F.2d 1272, 1275-1276 (9th Cir. 1990).

It is readily apparent, moreover, that the ALJ would be required to award disability benefits if Dr. Tholen's opinion were credited (albeit perhaps not for the period beginning with plaintiff's alleged date of onset, because his report post-dated plaintiff's onset date by more than a year, she did not receive any

mental health diagnoses or treatment until about a year after her onset date, and the record indicated that her mental state deteriorated over time after she lost her job). The record contains no conflicting examining or treating source opinion that could warrant rejection of Dr. Tholen's opinion, and remanding this case to allow the ALJ to obtain a consultative psychiatric examination would do little or nothing to illuminate plaintiff's mental state during the period preceding the ALJ's decision. See Benecke, 379 F.3d at 593 (noting that a remand for further administrative proceedings is appropriate "if enhancement of the record would be useful").

The only outstanding issued that remains with respect to Dr. Tholen's opinion is the date of onset of plaintiff's mental disability. As noted above, plaintiff did not receive any mental health diagnosis or treatment until March 2005, when Dr. Latteri diagnosed depression and began prescribing antidepressant medication. Dr. Tholen's report and plaintiff's own subjective accounts indicate that her emotional symptoms were progressive, beginning after she left her job, and that her level of functioning has declined over time due to the chronic nature of her symptoms and her loss of the financial security and other rewards associated with her long employment at the Farmers & Merchants Bank. Considering all of these factors, the appropriate remedy is to remand this case for a period of disability beginning on March 1, 2005 and a corresponding award of disability benefits.

**Conclusion**

For the reasons stated above, the Commissioner's decision is not supported by substantial evidence and does not reflect application of the proper legal standards. Accordingly, the Commissioner's decision is **reversed**, and this case is **remanded** to the Commissioner for an award of benefits consistent with this memorandum of decision.

**IT IS SO ORDERED.**

DATED: May 18, 2007

/ s /

_____
ANDREW J. WISTRICH
United States Magistrate Judge